[Cite as *State v. Baldwin*, 2026-Ohio-2822.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 115716 |
| v. | : | |
| BRANDON BALDWIN, | : | |
| Defendant-Appellant. | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 23, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-665692-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney and Chauncey Keller, Assistant Prosecuting Attorney, *for appellee.*

Stahl and Stephenson and Michael H. Stahl; Law Office of Michael G. Aird, LLC, and Michael G. Aird, *for appellant.*

MARY J. BOYLE, J.:

{¶ 1} Defendant-appellant Brandon Baldwin ("Baldwin") appeals from the Cuyahoga County Court of Common Pleas decision denying, without hearing, his

petition for postconviction relief, raising one assignment of error for our review, which states:

> The trial court erred when it dismissed [Baldwin's] Post-Conviction Relief (PCR) Petition without a hearing, prejudicing [Baldwin] and violating his 5th, 6th & 14th Amendment rights to the U.S. Constitution and violating his rights under Article I, Section 1, 10 & 16 of the Ohio Constitution.

{¶ 2} After careful review of the record, we affirm the trial court's decision.

## I. Facts and Procedural History

{¶ 3} After a bench trial, on January 12, 2023, Baldwin was found guilty of one count of rape in violation on R.C. 2907.02(A)(1)(b).[1] Two days later, the trial court sentenced him to life with the possibility of parole after serving a 25-year prison sentence. The trial court also declared Baldwin to be a Tier III sex offender.

{¶ 4} Baldwin appealed his conviction, which this court affirmed in *State v. Baldwin*, 2023-Ohio-3795 (8th Dist.) ("*Baldwin I*"). The following is a summary of the facts adduced at trial.

{¶ 5} I.C., then ten years old, was sleeping on the floor of the living room in her home. In the early morning hours, Baldwin, who was married to I.C.'s mother, returned home from Michigan where he worked and cared for his ailing father. I.C. awoke around 4:00 a.m. to Baldwin digitally penetrating her. Baldwin stopped and asked if she was okay. I.C. testified that she recognized his voice. She testified that when Baldwin left the room, she texted her friend in Arizona because she was afraid

---

[1] Baldwin was found not guilty of four counts of gross sexual imposition of a victim under the age of 13, as well as the sexually violent offender specifications. One count pertained to I.C., and three counts pertained to A.C., I.C.'s twin sister.

and she knew her friend could calm her down. She also told her sisters and her best friend the following day. According to her best friend, while they were on FaceTime I.C. revealed that Baldwin had touched her. Her best friend told her mother, who eventually revealed the information to I.C.'s mother. After I.C. disclosed the abuse, her sister claimed to have been sexually abused by Baldwin in the past as well.

{¶ 6} I.C.'s mother called police, and I.C. reported to the officer that Baldwin's "hand was in her underpants." (Tr. 298.) After further questioning of I.C., the officer testified that he "determined there was penetration with a digit inside of [I.C.]." (Tr. 299.)

{¶ 7} Baldwin denied the allegations. He told the Children and Family Services worker ("CFS worker") that he was in the house that evening and remembered seeing I.C. asleep on the couch. Baldwin claimed he was looking for the remote control for the television when I.C. awoke.

{¶ 8} At trial, Baldwin argued that I.C.'s older brother had potentially sexually assaulted I.C.; however, there was no evidence the older brother was home at the time. In addition, Baldwin argued that I.C.'s mother was lying on the witness stand about her relationship with her 19-year-old fiancé, who was introduced to the family as first becoming friends with I.C.'s sibling. Baldwin speculated that mother wanted a divorce, so she manipulated I.C. to blame Baldwin.

{¶ 9} In his direct appeal, Baldwin raised three assignments of error for review, challenging the trial court's decision excluding evidence implicating another suspect, evidence that would impeach a witness, and evidence of a witness's

misconduct. Baldwin also challenged the trial court's decision denying a mistrial based on the witness's misconduct. Finding no merit to Baldwin's appeal, this court affirmed his conviction for one count of rape. *Baldwin I* at ¶ 22.

{¶ 10} Baldwin appealed the decision to the Ohio Supreme Court. The Court declined jurisdiction. *State v. Baldwin*, 2024-Ohio-555.

{¶ 11} In January 2024, Baldwin timely filed with this court an App.R. 26(B) application to reopen his appeal asserting the following five proposed assignments of error:

> First proposed assignment of error: The appellant was denied due process and a fair trial pursuant to U.S. Const. Amend. V, VI and XIV and Ohio const. Art 1, Sec. 10 where there was insufficient evidence of penetration to the rape charge he was convicted of.
>
> Second proposed assignment of error: The trial court's nunc pro tunc sentence entries were without jurisdiction, or alternatively the court committed Preserved and Plain Error when it sentenced the Defendant to a term of imprisonment that is contrary to the Ohio Revised Code Sentencing Provisions.
>
> Third proposed assignment of error: The Appellant was denied due process and a fair trial pursuant to U.S. Const. Amend V, VI, and XIV and Ohio Const. Art. I Sec 10 when there was insufficient evidence of force to the rape charge.
>
> Fourth proposed assignment of error: The Appellant was denied due process and a fair trial pursuant to U.S. Const. Amend. V, VI and XIV and Ohio Const. Art. I Sec. 10 when the trial court amended the dates of the indictment at trial.
>
> Fifth proposed assignment of error: The trial court committed error when it issued a Nunc Pro Tunc Order changing the original sentencing entry from 10 years to life to a new sentence of 25 years to life.

*State v. Baldwin*, 2024-Ohio-6177 (8th Dist.) ("*Baldwin II*"). The State opposed the motion to reopen.

{¶ 12} According to App.R. 26(B), an application for reopening shall be granted if there exists a genuine issue as to whether an applicant was deprived of the effective assistance of appellate counsel on appeal. This court denied Baldwin's application to reopen finding that appellate counsel was not ineffective because (1) "evidence of penetration, entering the vulva or labia, is sufficient to support a rape conviction" therefore, Baldwin was not prejudiced by appellate counsel's failure to raise the first proposed assignment of error; (2) "the trial court's nunc pro tunc entries issued during the pendency of Baldwin's direct appeal were solely clerical in nature" and trial courts retain jurisdiction to correct clerical errors; therefore, Baldwin was not prejudiced by the failure of appellate counsel to raise the second and fifth assignments of error; (3) "the record clearly demonstrates that the element of force was established because Baldwin held and maintained a position over the minor child victim that did not require demonstration of any explicit threats or display of force for the jury to determine that the element of force was present to commit the offense of rape"; therefore, Baldwin was not prejudiced by the failure of appellate counsel to raise the third assignment of error; and (4) Crim.R. 7(D) allows the trial court to amend an indictment any time before, during, or after trial to correct a defect that does not change the name or identity of the crime charged; therefore, Baldwin was not prejudiced by the failure of appellate counsel to raise the fourth proposed assignment of error. *Id.* at ¶ 7-9, 14-15, 19-20, 23-25.

{¶ 13} Baldwin appealed the denial of his application for reopening to the Ohio Supreme Court. The Court again declined jurisdiction. *State v. Baldwin*, 2024-Ohio-4713.

{¶ 14} In April 2024, Baldwin filed, in the trial court, a timely petition to vacate or set aside sentence and conviction pursuant to R.C. 2953.21. The State opposed the petition, and the trial court denied Baldwin's motion without a hearing stating that

> [Baldwin] has failed to state substantive grounds to establish that he is entitled to [relief]. Specifically, [Baldwin]'s Petition fails to establish that counsel's performance was deficient and that he was prejudiced thereby in that the victim's initial disclosure was made prior to any claim of improper conduct by the government.

(J.E. July 15, 2024). Baldwin filed a motion for findings of fact and conclusions of law, which the trial court denied.

{¶ 15} Baldwin appealed the denial of his petition challenging, among other things, that the trial court failed to issue proper findings of fact and conclusions of law. This court agreed and remanded the case for the trial court to issue findings of fact and conclusions of law in compliance with R.C. 2953.21(H). *State v. Baldwin*, 2025-Ohio-1260, ¶ 22 (8th Dist.) ("*Baldwin III*").

{¶ 16} Upon remand, the trial court issued findings of fact and conclusions of law in accordance with this court's order. The trial court found that

> [d]efense counsel had the opportunity to and did conduct a thorough cross-examination of each witness. On cross-examination with the victim, counsel questioned her with respect to being coached, from where did she learn some of her terminology that she used (e.g., the internet), whether she was dreaming, what was said to investigators,

and whether the actual perpetrator was her brother. Counsel cross-examined the victim's mother on alternate motivations and credibility. Counsel cross-examined the CFS witness [Children Family Service worker] with theories of suggestibility and/or manipulation, alternate offenders, improper questioning, and investigative techniques and best practices. Counsel, through questioning and argument, did raise or address most, if not all, of the items that Dr. Jacobs suggests were the basis of the ineffective assistance of counsel claim.

. . .

In light of the evidence and testimony presented, there is not a reasonable probability that the trial would have ended with a different result had defense counsel hired an expert. The victim's testimony, the corroborating testimony, and the record as a whole demonstrate that the defendant did not support his petition with sufficient operative facts to establish substantive grounds for relief.

(J.E., Findings of Fact and Conclusions of Law, Sept. 25, 2025.)

{¶ 17} Baldwin timely appeals.

## II. Law and Analysis

### A. Standard of Review

{¶ 18} In Ohio it is well-established that we review a trial court's decision to deny a postconviction-relief petition without conducting a hearing for an abuse of discretion. *State v. Grier*, 2025-Ohio-2529, ¶ 4 (8th Dist.), citing *State v. Smith*, 2010-Ohio-1869, ¶ 23 (8th Dist.); *accord State v. Hatton*, 2022-Ohio-3991, ¶ 38 ("We review a decision to grant or deny a petition for postconviction relief, including the decision whether to afford the petitioner a hearing, under an abuse-of-discretion standard."). An abuse of discretion occurs when a court exercises "its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

**B. Petitions for Postconviction Relief**

{¶ 19} A petition for postconviction relief is a civil collateral attack on a criminal judgment that allows a defendant to establish a violation of his constitutional rights, including a claim for ineffective assistance of trial counsel, which is alleged in this case. *Grier*, ¶ 5, citing *State v. Calhoun*, 86 Ohio St.3d 279, 281 (1999); R.C. 2953.21. A petition for postconviction relief is a means to resolve constitutional claims that cannot be challenged on direct appeal because the evidence supporting the claims is outside the record. *State v. Gray*, 2021-Ohio-2446, ¶ 8 (8th Dist.), citing *State v. Milanovich*, 42 Ohio St.2d 46 (1975).

{¶ 20} A criminal defendant seeking to challenge his conviction through a petition for postconviction relief pursuant to R.C. 2953.21 is not automatically entitled to a hearing. *Grier* at ¶ 5, citing *State v. Jackson*, 64 Ohio St.2d 107, 110 (1980). "To warrant an evidentiary hearing on a petition for postconviction relief, the petitioner bears the burden of producing evidence that demonstrates a cognizable claim of constitutional error." *Hatton* at ¶ 37, citing *State v. Sidibeh*, 2013-Ohio-2309, ¶ 13 (10th Dist.).

{¶ 21} In *State v. Bunch*, 2022-Ohio-4723, the Ohio Supreme Court clarified the standard for granting a hearing on a petition for postconviction relief, particularly when the claims involve ineffective assistance of trial counsel. To grant a hearing, the trial court must "'determine whether there are substantive grounds for relief.'" *Id.* at ¶ 23, quoting R.C. 2953.21(D). If the petition "'is sufficient on its face to raise an issue that the petitioner's conviction is void or voidable on

constitutional grounds, and the claim is one which depends upon factual allegations that cannot be determined by examination of the files and records of the case, the petition states a substantive ground for relief.'" *Id.*, quoting *Milanovich* at paragraph one of the syllabus. In determining whether there are substantive grounds for relief, the court must consider the petition, the supporting affidavits, and the documentary evidence, as well as all the files and records pertaining to the proceedings. R.C. 2953.21(D). "Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues even if a direct appeal of the case is pending." R.C. 2953.21(F).

## C. Ineffective-Assistance-of-Counsel Standard

{¶ 22} When a postconviction-relief petition alleges ineffective assistance of counsel, the petitioner "'bears the initial burden to submit evidentiary material which contains sufficient operative facts to demonstrate a substantial violation of defense counsel's essential duties to his client and that this ineffectiveness operated to the client's prejudice.'" *Grier* at ¶ 4, quoting *Jackson* at syllabus. In other words, Baldwin must demonstrate that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defendant so as to deprive him of a fair trial. *State v. Trimble*, 2009-Ohio-2961, ¶ 98, citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The failure to prove either prong of this two-part test makes it unnecessary for a court to consider the other prong. *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000), citing *Strickland* at 697.

{¶ 23} Baldwin argues that for the trial court to properly evaluate his counsel's deficient performance, and whether that deficiency prejudiced him, thus depriving him of a fair trial, it was necessary that a hearing be held. He points out that he included in his petition an affidavit of Dr. Katherine Jacobs ("Dr. Jacobs") that highlights the importance of scientific knowledge about child psychology, memory, and interview techniques in evaluating allegations. He argues that Dr. Jacobs is a clinical and forensic psychologist with specialized training; she emphasizes the unreliability of child testimony because of factors like suggestibility, source monitoring errors, and developmental limitations; scientific research shows children can confuse actual experiences with imagination or external influences; proper forensic interview techniques and expert testimony are essential to assess the reliability of child statements. Dr. Jacobs avers that the absence of such expert input and scientific discussion at trial prejudiced Baldwin's case because it could have assisted the court in understanding the potential flaws in child testimonies, possibly affecting the outcome.

{¶ 24} The State counters that the trial court made sufficient findings supporting that a hearing was not required because Baldwin did not prove his counsel's deficient performance and that it prejudiced him in that he did not prove that the outcome would have been different. The State further argues that the affidavit of Dr. Jacobs, suggesting that expert testimony was necessary, was not sufficient to establish deficient performance. The record the State contends, including I.C.'s testimony and corroboration, supported the conviction and that the

cross-examination by defense counsel was sufficient for the trial court to deny Baldwin's petition on the record it had before it.

{¶ 25} In this case, the crux of Dr. Jacobs's affidavit is that "[i]t is [her] opinion that statements made by — or purportedly made by — the children lack[ed] indicia of trustworthiness and were elicited under circumstances which are known to adversely influence children's perception, interpretation and memory of events[.]" (Petition exhibit No. 1, p. 3.) Specifically, Dr. Jacobs suggests that I.C.'s allegations are not reliable because when she was interviewed by the police officer, mother interjected and elicited details that were not originally reported by I.C. to her friend. Dr. Jacobs insists that the formation of memories is outside a layperson's general knowledge and experience and cross-examination is insufficient to address these issues.

{¶ 26} First, we find no merit to Dr. Jacobs assertion that mother influenced I.C.'s story. According to the transcript attached to Baldwin's petition, mother only interjected during the initial police interview with I.C. in an effort to determine when the incident took place. Contrary to Dr. Jacobs's accusations, mother did not provide or elicit details from I.C. in an effort to frame Baldwin or to make the accusations more salacious. Rather, it was clear from the transcript that mother was beside herself with shock and could barely comprehend what was happening, much less destructively influencing what I.C. was reporting. In addition, trial counsel thoroughly cross-examined mother regarding how she handled the accusations and mother's incentive to enhance or influence the accusations.

{¶ 27} Furthermore, I.C.'s best friend testified that I.C. told her that Baldwin touched her inappropriately and that she relayed that information to her own mother. The best friend did not elaborate on whether I.C. gave her specific details. Therefore, Dr. Jacobs's assertion that I.C.'s story was exaggerated, with the help of her mother, by the time I.C. reported the incident to the police is purely speculation because we do not know exactly what I.C. told her best friend.

{¶ 28} Next, contrary to Baldwin's assertion, I.C. was questioned extensively about her memory of the incident and whether she was "coached"; where she learned words like "sexual assault," "vagina," and "clitoris"; what her internet browsing history included; and whether she could have dreamed the incident. Furthermore, this was not a case of delayed disclosure; I.C. reported the incident to her sisters and her best friend within a day of the incident and spoke with the police officer soon thereafter. I.C. remained steadfast in her report of what happened to her and who sexually assaulted her even after a rigorous cross-examination.

{¶ 29} Finally, assuming for the sake of argument that the police officer and the CFS worker failed to follow proper protocol when interviewing I.C., a review of the record shows that trial counsel skillfully cross-examined them about how they interviewed the children and how their investigation unfolded.

{¶ 30} For instance, trial counsel questioned the CFS worker about her initial interview with I.C., which occurred at home. The CFS worker testified that mother was not present in the room when she spoke with I.C. because she wants to create a safe environment for the child to describe what happened. The CFS worker

confirmed that she speaks with children alone to avoid manipulation by a parent. She also confirmed that parents have in fact manipulated children, especially during custody battles. The CFS worker also admitted that if mother was in the room when I.C. was interviewed by police, that could pose a problem if mother was not supportive or answering for I.C. She said that it is best practice to interview children by themselves to avoid undue influence. However, she was not surprised that mother was present when I.C. spoke with the male police officer and suggested that I.C. may not have been comfortable enough to speak with a male police officer.

{¶ 31} In addition, trial counsel questioned the CFS worker regarding I.C.'s sexual terminology and she explained that the words children use are dependent upon how the parents raise the children. The CFS worker admitted that she was not aware of prior allegations of sexual abuse within the family; however, she testified that it had no bearing on this case because the accusations did not involve the same individuals.

{¶ 32} Likewise, trial counsel established that the police officer did not have any special training or much experience with interviewing sexual-assault victims.

{¶ 33} After careful review of the record, we find that trial counsel was able to establish the circumstances surrounding I.C.'s disclosures so that the trial court could evaluate I.C.'s memories properly. We also note that this was a bench trial and that the same judge who presided over the trial and determined the credibility of the witnesses and guilt of Baldwin also reviewed the postconviction-relief petition and Dr. Jacobs's affidavit. The trial court concluded, and we agree, that Dr. Jacobs's

expert testimony would not have changed the outcome of the trial. Any flaws pointed out by Dr. Jacobs in her affidavit could be properly evaluated by the trial court without holding an evidentiary hearing.

{¶ 34} We now turn to Baldwin's reliance on *Bunch*, wherein a divided Ohio Supreme Court held that Bunch met the standard to be entitled to an evidentiary hearing on his claim that trial counsel was ineffective for failing to engage an expert regarding eyewitness identification and the phenomenon of unconscious transference. *Bunch,* 2022-Ohio-4723, ¶ 15, 52. Based on the facts of this particular case, we find Baldwin's reliance on *Bunch* misguided.

{¶ 35} In *Bunch*, although the victim positively identified three out of four perpetrators, the victim did not definitively identify Bunch as the fourth perpetrator in the initial lineup. It was only after seeing his picture in a newspaper article over a week later describing him as a suspect that she became certain that he was her attacker. *Id.* at ¶ 6. Bunch's first attorney secured funds to hire an expert witness regarding eyewitness identification. After that attorney withdrew, however, Bunch's second attorney did not consult with any experts for trial. *Id.* at ¶ 10. Notably, the second attorney later received a stayed suspension from the practice of law for neglecting a different criminal matter around the same time as Bunch's trial. *Id.* at ¶ 14.

{¶ 36} In concluding that Bunch's trial counsel may have been ineffective, the Ohio Supreme Court distinguished other cases that involved "a trial counsel's choice between eliciting expert testimony through the cross-examination of the

state's expert witness or eliciting expert testimony by presenting a defense expert." *Id.* at ¶ 34.[2] The *Bunch* Court explained that the State did not have an expert witness for Bunch to cross-examine, and "[t]he only way for Bunch's counsel to present expert testimony to the jury regarding the psychology behind eyewitness identification would have been through an expert for the defense." *Bunch* at ¶ 34.

{¶ 37} Unlike the victim in *Bunch*, who was repeatedly raped by a group of strangers and was initially unsure whether Bunch was one of the assailants, I.C. knew Baldwin because he raised her since she was a little girl. Even when Baldwin's trial attorney cross-examined her on the possibility that it was someone else who assaulted her, I.C. never faltered in her accusation that Baldwin had sexually assaulted her. Her story was consistent from the first time she reported the incident to her friend until her trial testimony nearly two years later. There is no evidence, unlike in *Bunch*, that the perpetrator was suggested to I.C. I.C. on her own, almost immediately reported what happened to her friend and identified Baldwin as the perpetrator. Indeed, Baldwin placed himself at the scene of the offense.

---

[2] *See State v. Nicholas*, 66 Ohio St.3d 431, 436 (1993) ("[T]he failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel."); *State v. Thompson*, 33 Ohio St.3d 1, 10-11 (1987) (holding trial counsel not ineffective where they "decided not to request the appointment of a forensic pathologist, choosing instead to rely on their cross-examination of the state's expert in order to rebut the evidence of rape"); *see also State v. Hartman*, 93 Ohio St.3d 274, 299 (2001); *State v. Foust*, 2004-Ohio-7006, ¶ 97-98 (finding trial counsel's failure to request funds for a DNA expert, an alcohol and substance-abuse expert, a fingerprint expert, and an arson expert did not amount to ineffective assistance of counsel because appellant's need for experts was "highly speculative" and counsel's choice "to rely on cross-examination" of prosecution's expert was a "legitimate tactical decision").

{¶ 38} However, the *Bunch* Court stated that "[a]lthough rare, there are some instances in criminal cases when 'the only reasonable and available defense strategy requires consultation with experts or introduction of expert evidence.'" *Id.* at ¶ 39, quoting *Harrington v. Richter*, 562 U.S. 86, 106 (2011). We find that this is not one of those cases where an expert is necessary to establish a defense because Baldwin's theory from the moment he spoke with the police and the CFS worker was that someone else in the home sexually assaulted I.C. and that mother persuaded I.C. to blame Baldwin because mother wanted a divorce. In essence, Baldwin argued that I.C.'s memories were tainted by her mother's animosity towards Baldwin. Baldwin's theory was established at trial through cross-examination, as well as through witnesses who testified for the defense.

{¶ 39} Although the formation of memories may not be common knowledge, it is a well-known fact that children may be improperly influenced by the people around them. Therefore, it was not necessary for trial counsel to hire or consult with an expert to establish the theory when it was easily tested by cross-examination. Furthermore, I.C. testified at trial and was subject to cross-examination. Any issue with the "reliability" of the I.C.'s statements were developed without difficulty during cross-examination, so that the trial court could evaluate I.C.'s credibility. Finally, even if Baldwin hired an expert, we cannot say that the result of the trial would have been different.

{¶ 40} After careful review of Baldwin's petition, the accompanying affidavit and transcripts, as well as the entire record of the proceedings, we find that Baldwin

did not establish substantive grounds for relief in order to warrant a hearing on his petition. In other words, Baldwin's petition, on its face, has failed to allege facts sufficient to warrant a hearing. As a result, we find that the record does not support Baldwin's allegation that trial counsel was deficient or that Baldwin was prejudiced by trial counsel's performance. Therefore, the trial court did not abuse its discretion by denying Baldwin's petition without hearing.

{¶ 41} Accordingly, Baldwin's sole assignment of error is overruled.

{¶ 42} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MARY J. BOYLE, JUDGE

EILEEN T. GALLAGHER, P.J., and
EMANUELLA D. GROVES, J., CONCUR